Sharon **CALAROSA**, Appellant,

v.

**Judy A. STOWELL, John Calarosa,**
**Respondents.**

**No. WD 57577.**

Missouri Court of Appeals,
Western District.

Nov. 14, 2000.

Timothy Allen Toth, Independence, for appellant.

Ronald Scott Smith, Kansas City, for respondent Judy Stowell.

Keith Wayne Ferguson, Kansas City, for respondent John Calarosa.

Before Presiding Judge SMART, Judge ELLIS and Judge LAURA DENVIR STITH.

LAURA DENVIR STITH, Judge.

This appeal arises from an action concerning an automobile accident. Plaintiff–Appellant Sharon Calarosa was a passenger in an automobile owned by her but driven by her husband, John Calarosa. Ms. Calarosa's vehicle was struck from behind by a vehicle operated by Respondent Judy Stowell. Ms. Calarosa sued Ms. Stowell for negligence in the Circuit Court of Jackson County, Missouri, the Honorable C. William Kramer presiding, and Ms. Stowell impleaded Mr. Calarosa as a third-party defendant. Mr. Calarosa was ultimately dismissed by the court below at the close of Ms. Stowell's evidence. After trial, and in accordance with the jury's verdict, the court entered a judgment of $50,000 in favor of Ms. Calarosa.

Although Ms. Calarosa filed neither a motion for new trial nor motion for judgment notwithstanding the verdict, she now appeals, arguing that the trial court erred: (1) in allowing Ms. Stowell to implead John Calarosa as a third-party defendant,

and in denying Mr. Calarosa's motions for directed verdict and summary judgment; (2) in denying Ms. Calarosa's motions in limine seeking leave to inform the jury of the procedural reason why her husband, John Calarosa, was present as a defendant at trial, and to further explain to the jury why counsel for Mr. Calarosa might attempt during cross-examination to mitigate Ms. Calarosa's injuries; (3) in allowing counsel for Mr. Calarosa to cross-examine her expert witness concerning the scope and extent of her injuries; (4) in failing to *sua sponte* grant a directed verdict after opening statements on the ground that allegedly prejudicial statements about mitigation of her damages were made by counsel for Ms. Stowell in his opening statement; (5) in failing to *sua sponte* grant a new trial because Ms. Calarosa's trial counsel allegedly disregarded her wishes by praying for damages in excess of $30,000,000 in closing argument; and (6) in failing to *sua sponte* grant additur. Finding no reversible error in any of the respects alleged, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff–Appellant Sharon Calarosa was riding in a car driven by her husband, John Calarosa, when the car was rear-ended by the car driven by Defendant–Respondent Judy Stowell on Highway 40 between its intersections with 10th Street and with Highway 7 in Blue Springs, Missouri on March 12, 1997. Ms. Calarosa sued Ms. Stowell for injuries to her back and neck, including a herniated disc which ultimately required surgery, and for loss of consortium. Mr. Calarosa sued for his own injuries and for loss of consortium. Ms. Stowell filed an Answer and affirmative defenses in which she alleged that Mr. and Mrs. Calarosa were partially at fault for the accident.

Over the ensuing year and one half, discovery took place. Numerous trial dates were set and continued. Trial was then set for February 16, 1999. Five days before trial, on February 11, 1999, Ms. Calarosa dismissed her loss of consortium claim and Mr. Calarosa dismissed all of his claims against Ms. Stowell, and trial was continued so that medical documents could be exchanged and due to illness on the part of counsel.

The following month, the Calarosas' counsel withdrew. Ms. Stowell filed a third-party petition against Mr. Calarosa, alleging that, if she was liable to Ms. Calarosa, then Mr. Calarosa was at fault and liable for all or part of the injuries suffered by his wife due to his negligence in driving their vehicle. Mr. Calarosa hired new counsel, denied liability, and filed a motion for summary judgment on the third-party claim. That motion was denied and trial began on July 12, 1999. Before trial began, Ms. Calarosa filed a motion in limine seeking leave of court to tell the jury the reason why her husband was in the case as a third-party defendant and to explain that, since he was made a defendant, he had no choice but to try to mitigate Ms. Calarosa's damages so as to lower the potential value of his contribution obligation should he be found partially at fault. The court denied the motion.

During opening statement, counsel for the third-party defendant, Mr. Calarosa, mentioned facts which plaintiff now alleges had the effect of mitigating her damages. As plaintiff does not inform us in her appellate brief what those allegedly damaging statements were, nor point us to any part of the transcript where these statements were made, we do not know which statements she alleged had this effect. Neither at that point, nor at any other point in the record which is identified by counsel, did plaintiff attempt to raise the issue again in the context of the trial, nor does she anywhere make an offer of proof nor otherwise inform us as to exactly what the jury would have been told if this argument had been permitted.

Following opening statements, third-party defendant Mr. Calarosa moved for a

directed verdict on the third-party claim against him. Plaintiff, his wife, *opposed* the motion, on the basis that, while the evidence of Mr. Calarosa's fault was extremely weak, it was probably sufficient to withstand a directed verdict in light of defendant's claim that there would be evidence at trial of a sudden stop by Mr. Calarosa. The court overruled the motion for directed verdict. At trial, the parties presented evidence concerning the accident. According to plaintiff, the court permitted counsel for Mr. Calarosa to cross-examine plaintiff about her damages and this prejudiced her by mitigating her damages. Unfortunately, again, plaintiff does not, either in her statement of facts or in her argument, identify exactly what part of the cross-examination she alleges was improper or unduly prejudicial.

In regard to the defendant's third-party claim, the record shows that Ms. Stowell testified at trial that Mr. Calarosa's brake lights were not on when she was behind him; that cars were proceeding; that she then looked in the rear-view mirror for just a second, and as soon as she looked forward again she saw that his brake lights were on; she put her brakes on immediately, but could not stop in time to avoiding hitting his car. At the close of defendant's evidence, third-party defendant again moved for a directed verdict, arguing that Ms. Stowell's testimony was insufficient to make out a case of negligence against Mr. Calarosa based on a sudden stop. The court agreed and directed a verdict for the third-party defendant. The case continued only against defendant Stowell. The ruling dismissing the third-party defendant is not appealed.

In closing argument, counsel for plaintiff argued that the evidence showed plaintiff's remaining life expectancy to be 30 to 40 years, and that the jury should award damages of $1,000,000 per year for the balance of plaintiff's life. Defense counsel argued that damages should be no more than $25,000. The jury awarded plaintiff $50,000. Plaintiff failed to file a motion for

new trial or a motion for JNOV, but approximately six months after the trial, on January 18, 2000, plaintiff sent a note to the court raising a number of complaints about her trial counsel, including that she had told her counsel not to argue for so much money, but that counsel did it anyway over her objection. Plaintiff also appealed to this court.

## II. STANDARD OF REVIEW

Rule 78.07(a)(1) provides that "[I]n jury tried cases, other than cases tried with an advisory jury, allegations of error to be preserved for appellate review must be included in a motion for new trial...." Thus, "[t]he failure to file a motion for new trial preserves nothing for appellate review." *Messick v. Atchison, Topeka & Santa Fe Railway Co.*, 924 S.W.2d 620, 621 (Mo.App. W.D.1996). Hence, because Ms. Calarosa failed to file a motion for new trial—thereby failing to give the trial court the opportunity to correct any alleged errors—she has preserved no trial errors for appellate review. We are thus constrained to review Ms. Calarosa's allegations of trial error only for plain error, which, under Rule 84.13(c), "may be considered on appeal, in the discretion of the court, though not raised or preserved, when the court finds that manifest injustice or miscarriage of justice has resulted therefrom."

We find, in so reviewing, that Ms. Calarosa has categorically failed to make the requisite showing to trigger plain error review, and, indeed, that even had the allegations been properly preserved, Ms. Calarosa would have been unsuccessful here.

## III. RAISING ERRORS AFFECTING A CO-DEFENDANT

In her first point on appeal, Ms. Calarosa alleges that the trial court erred: 1) in allowing Defendant Judy Stowell to implead John Calarosa as a Third–Party Defendant; 2) in denying Mr. Calarosa's Motion for Summary Judgment as to Ms.

Stowell's impleader claim against him; and 3) in denying Mr. Calarosa's Motion for Directed Verdict as to the impleader claim against John Calarosa at the end of Ms. Stowell's opening statement.

Ms. Calarosa argues that she qualifies as an "aggrieved party" with respect to the trial court's refusal, on these three occasions, to dismiss Defendant Judy Stowell's Third Party Complaint against John Calarosa, because Mr. Calarosa's presence as a third-party defendant tended to confuse the jury and hinder her ability to advance a "clear and understandable claim" against Ms. Stowell. We disagree.

■ The statute governing the right of a party to appeal states in relevant part:

Any party to a suit aggrieved by any judgment of any trial court in any civil cause from which an appeal is not prohibited by the constitution, nor clearly limited in special statutory proceedings, may take his appeal to a court having appellate jurisdiction from . . . any final judgment in the case . . .

Sec. 512.020 RSMo 1994. By its very language, Section 512.020 requires that "a party be 'aggrieved' by the judgment below to have any right to appeal." Our cases indicate, generally, that "a party is 'aggrieved' when the judgment below operates prejudicially and directly on his personal or property rights or interests and such effect is immediate and not merely a possible remote consequence." *Harris v. Union Electric Co.,* 685 S.W.2d 607, 611 (Mo.App. E.D.1985); *Horace Mann Ins. Co. v. Riley,* 716 S.W.2d 820, 822 (Mo.App. W.D.1986). We reiterated in *Manager of Division of Finance of Jackson County v. Parcels of Land Encumbered with Delinquent Tax Liens,* 947 S.W.2d 90 (Mo.App. W.D.1997), that in order to be sufficiently "aggrieved" to appeal a judgment, the consequences of the judgment to the appellant must be "immediate . . . and not [merely a] possibility of . . . remote repercussions." *Id.* at 93.

We applied this rule in *Bond v. California Compensation and Fire Co.,* 963 S.W.2d 692 (Mo.App. W.D.1998). The Bonds owned a building which was insured by Cal–Comp Insurance Co. in the amount of $200,000. After the building was destroyed by fire, Mr. Bond inspected the premises and reported his claim to Cal–Comp, who instructed Mr. Bond to contact his choice of contractors from a list provided by Cal–Comp, to bid on the removal of fire debris from the destroyed property. *Id.* at 694–95. Mr. Bond chose Industrial Salvage, and Industrial later commenced to clear the property of debris. In clearing the debris, Industrial used a "trac-type" bulldozer, causing substantial damage to the floor of the premises. After the removal of the debris, Cal–Comp paid Mr. Bond $200,000 as required by the policy, and $10,036 to cover the cost of the debris removal, which Mr. Bond paid to Industrial. *Id.*

The Bonds subsequently sued Cal–Comp, alleging that Cal–Comp negligently caused damage to the floor of the premises, in that Industrial, acting as agent for Cal–Comp, used a trac-type bulldozer rather than one with tires. Cal–Comp impleaded Industrial as a third-party defendant in the action, and the case proceeded to trial. *Bond,* 963 S.W.2d at 695. At the close of the Bonds' evidence, Cal–Comp and Industrial moved for directed verdicts. The trial court granted Cal–Comp's motion for directed verdict, and because Cal–Comp's third-party claim against Industrial was necessarily predicated on the success of Bond's claim against Cal–Comp, the court also granted Industrial's motion for directed verdict. *Id.* On appeal, the Bonds alleged that the trial court erred in granting a directed verdict, not only as to their claim against Cal–Comp, but also as to Cal–Comp's claim against Industrial. *Id.* at 696.

This Court reasoned, in applying the principles mentioned above underlying the requirement that a party be "aggrieved":

Here, even though Cal–Comp's third-party claim against Industrial Salvage was contingent upon the success of the appellants' claim against Cal–Comp, logically and legally the appellants were only aggrieved as to the directed verdict granted as to their claim against Cal–Comp and not as to the directed verdict in favor of Industrial Salvage. Thus, the appellants have no standing on appeal to challenge the directed verdict in favor of Industrial Salvage on Cal–Comp's claim against it.

*Bond,* 963 S.W.2d at 696.

■ In the case at bar, Ms. Calarosa appeals the trial court's orders, as did the appellants in *Bond,* concerning a third-party petition against a party—John Calarosa—whom she did not herself name as a defendant in her suit. Further, she alleges only secondary or even tertiary effects of the trial court's refusal to dismiss the third-party petition as the foundation for her "grievance." The primary effects, however, of the trial court's orders refusing to dismiss the third-party petition were clearly upon Mr. Calarosa, the third-party defendant. While Ms. Calarosa points to a number of remote repercussions flowing from the trial court's rulings—i.e., Mr. Calarosa's presence as a third-party defendant being a source of confusion for the jury, and his apparently effective cross-examination of her expert's testimony as to her injuries—none of these consequences seem to represent the direct and substantial effects on her interests contemplated under Sec. 512.020 to be deemed a "grievance." The court's rulings may have changed the landscape of the trial, but they did not directly affect her right to relief. The reasoning of *Bond* is controlling here, and Ms. Calarosa has no statutory right to appeal these rulings.

■ Even were Ms. Calarosa to have standing to raise these issues, however, she would not be entitled to relief. Thus, while Ms. Calarosa's Point Relied On contends that the trial court erred in granting Ms. Stowell leave to file her third-party petition, she concedes in the argument portion of her brief that the trial court did not abuse its discretion in rendering this decision. Ms. Calarosa's concession at the outset of her argument necessarily defeats this claim.

■ Similarly, while Ms. Calarosa claims that the trial court erred in denying John Calarosa's motion for summary judgment on the third-party claim, "it is well-settled that the denial of a motion for summary judgment is not subject to appellate review ... even when an appeal is taken from a final judgment and not from the denial of a motion for summary judgment." *Kabir v. Missouri Dept. of Social Services,* 845 S.W.2d 102, 103 (Mo.App. W.D.1993) (internal citations omitted). Therefore, the trial court's order, in this respect, is not appealable by any party.

■ Finally, Ms. Calarosa waived her claim that the court below erred in denying Mr. Calarosa's motion for directed verdict at the close of Ms. Stowell's opening statement, for, while she mentions this error in her Point Relied On, she does not argue it in the argument portion of her brief. *See Coleman v. Gilyard,* 969 S.W.2d 271, 273 (Mo.App. W.D.1998) (holding that arguments raised in a Point Relied On which are not supported in the argument portion of the brief are deemed abandoned and preserve nothing for appellate review). For all of the foregoing reasons, this Point is denied.

## IV. DENIAL OF MOTIONS IN LIMINE

■ In her second point on appeal, Ms. Calarosa alleges that the trial court erred in denying her pretrial motions in limine requesting leave of court to discuss with the jury the procedural reason for Mr. Calarosa's impleader as a third-party defendant, and to comment to the jury on the reason that Mr. Calarosa's counsel might attempt to mitigate her damages so as to lessen his own potential liability. She argued that, by denying these motions, the

court permitted the jury to hear "an opening statement by [the] third-party defendant that mitigated [her] damage[s]," and further was allowed to hear questions from third-party defendant John Calarosa's counsel that "tended to discredit [Ms. Calarosa] and minimize the damages she claimed."

This point was not preserved below, for it is well-settled that "a pretrial ruling on a motion in limine is interlocutory in nature and is not an appealable order." *Jordan v. Abernathy*, 845 S.W.2d 86, 88 (Mo.App. E.D.1993); *Rhodes v. Blair*, 919 S.W.2d 561, 563 (Mo.App. S.D.1996). Ms. Calarosa thus appeals from an order which is not subject to appellate review. She never attempted to renew this motion at trial, so as to give the court a chance to consider it in the context of the evidence. She has failed to preserve the issue for review. *Rhodes*, 919 S.W.2d at 563.

## V. MITIGATION OF DAMAGES

In her third point, Ms. Calarosa claims that it was error for the trial court to allow counsel for third-party defendant John Calarosa to cross-examine her expert witness concerning the extent of the injuries she suffered in the accident, in that this allowed "a party who should not have been in the trial to further mitigate the plaintiff's damages when the right to do so was derivative and preserved by the defendant/third-party plaintiff's ability to defend against plaintiff's claim for damages." Essentially, she argues that, because she elected to sue only Ms. Stowell as a defendant, only Ms. Stowell was affected by her damage claim. Thus—by Ms. Calarosa's reasoning—only Ms. Stowell could cross-examine Ms. Calarosa's expert witness concerning the scope of her injuries, since the only issue affecting the third-party defendant John Calarosa was the percentage of fault ultimately attributed to him. The law, however, does not support this argument, and indeed, dictates a contrary conclusion.

To illustrate, in *Ferrellgas, L.P. v. Williamson*, 24 S.W.3d 171 (Mo.App. W.D. 2000), we reaffirmed the proposition that a party sued for contribution by the defendant in an underlying action has a right to litigate both liability and the amount of damages. *Id.* at 178. Indeed, a party charged with contribution in a tort case—whether they be impleaded in the original action by the defendant, or later sued for contribution—has "the right to perform discovery, and to present evidence to refute [the plaintiff's] charges ... [and] they are entitled to a full opportunity to defend against the ... allegations of their fault *and the amount of damages which the injured party suffered.*" *Safeway Stores, Inc. v. City of Raytown*, 633 S.W.2d 727, 732 (Mo. banc 1982) (emphasis added). Thus, Ms. Calarosa's argument that third-party defendant John Calarosa had no right to cross-examine her expert witness concerning the scope of her injuries is simply wrong, and the trial court did not abuse its discretion in permitting counsel for Mr. Calarosa to do so.

Further, even were the trial court to have erred in permitting Ms. Stowell's counsel to cross-examine Mr. Calarosa, where, as here, this error is not preserved, this would not require reversal unless it caused manifest injustice. *See Messick*, 924 S.W.2d at 621. Here, while Ms. Calarosa conclusorily states that Ms. Stowell's cross-examination caused her prejudice, she neither cites to nor quotes any portion of the transcript in support of this conclusory statement. We therefore do not know what aspects of the cross-examination she believes prejudiced her, or why she claims they did so. It is an appellant's duty to provide record citations in support of his or her arguments. *Coleman*, 969 S.W.2d at 274. It is not the court's obligation to search the record for error. *Id.* Such a failure to supply a factual and legal basis to support claims of error preserves nothing for review. Point denied.

## VI. OPENING STATEMENT

Ms. Calarosa further argues that it was error for the court below to fail, on its own motion, to grant her a new trial because of alleged deficiencies in third-party plaintiff Judy Stowell's opening statement. More specifically, she claims that Ms. Stowell's opening statement made factual allegations that she was ultimately unable to prove at trial, and that, because of these untenable statements, Ms. Calarosa was prejudiced by comments in Ms. Stowell's opening statement that tended to mitigate the extent of Ms. Calarosa's injuries.

■ Although she again does not argue so explicitly, Ms. Calarosa is in effect saying that, because an error occurred in opening statements—in that it was prejudicial to allow Ms. Stowell's counsel to argue fault on the part of Mr. Calarosa—a mistrial was warranted at that time due to prejudice flowing from those statements. She affirmatively waived this claim, however, when her counsel argued to the trial judge that he should overrule the motion for directed verdict at the end of opening statements because a minimally submissible case against Mr. Calarosa had been stated. "[A] party cannot complain on appeal of alleged error which his own conduct creates," and more to the point, "[a] party cannot lead the court into error and then employ that error as a source of complaint." *Reed v. Rope*, 817 S.W.2d 503, 509 (Mo.App. W.D.1991); *Johnson v. Moore*, 931 S.W.2d 191, 195 (Mo.App. E.D. 1996) (a party cannot complain on appeal of any alleged error which by his or her own conduct at trial he or she joined in or to which he or she acquiesced). Ms. Calarosa cannot, therefore, convict the court of an error she led the court into committing, by acquiescing in, and even encouraging, the court's rejection of Mr. Calarosa's motion for directed verdict.

■ By so ruling, we do not mean to suggest that the asserted error, if preserved, would have had merit. Ms. Calarosa asks us to speculate that Ms. Stowell's counsel affirmatively misled the jury as to what the evidence would be at trial, based on the fact that at trial Ms. Stowell's testimony was not sufficient to avoid a directed verdict. She offers nothing to show that counsel knew during opening statement that Ms. Stowell would equivocate as she did at trial. Counsel's comments in his opening statement were accurate based on Ms. Stowell's deposition testimony. This argument is not well-taken. Point denied.

## VII. DAMAGES ARGUMENT

■ In her fifth allegation of error, Ms. Calarosa argues that she was entitled to a new trial because her trial counsel did not follow her directions during closing argument. Ms. Calarosa's counsel, in discussing damages during closing argument, asked the jury to consider awarding $1,000,000 per year for the balance of Ms. Calarosa's life. Evidence showed that Ms. Calarosa could expect to live another 30–40 years, so her counsel impliedly asked the jury to assess damages in excess of 30 million dollars. Ms. Calarosa now argues that this argument was contrary to her wishes, in that it only "made her appear greedy" to the jurors, and prejudiced her so much that a new trial is required.

Ms. Calarosa cites to us no authority for her claim that her counsel's failure to follow her directions as to how to conduct closing argument in a civil trial provides a basis for granting a new trial, and we know of none. Even if counsel did not follow her wishes as to the amount of damages for which to pray during closing argument, and even were this an issue as to which counsel should have followed her wishes, and even if counsel's strategy was not an effective one, it is an issue best handled between counsel and the client. Neither defense counsel nor the judge caused this alleged error, and it provides no basis for a new trial. Point denied.

## VIII. ADDITUR

Finally, Ms. Calarosa claims that the court below erred in failing to grant additur or a new trial because the jury did not award a fair and reasonable amount to compensate plaintiff for her injuries. In

support, she does not cite any event during trial that could have caused the low award, nor does she prove actual out-of-pocket expenses greater than the damage award. She argues only that she had medical expenses of $22,000 and would have permanent injury due to the disk injury, that she had a life expectancy of 34 years, and that the judge refused to let her get up and stretch in the courtroom for fear this would distract the jury. She speculates that the fact she periodically had to leave the courtroom to stretch, due to her disk injury, may have led the jury to believe that she did not care about her case. However, she did not raise as error on appeal the court's decision not to let her stand and stretch at counsel table, nor does she offer any basis but speculation to believe this ruling affected the verdict.

 In any event, additur is not based on a finding that an improper ruling unduly prejudiced the jury. A new trial is the only remedy where such prejudice occurred. Additur is proper only where the trial court believes that the jury made an honest mistake as to damages. *Massman Construction Company v. Missouri Highway and Transportation Com'n*, 914 S.W.2d 801, 803 (Mo. banc 1996). For this reason, under Section 537.068, a court can grant additur only if it finds the verdict was less than fair and reasonable compensation, and an appellate court will reverse a denial of additur only if it finds that the verdict is so inadequate that it "shocks the court's conscience and convinces the court that both the jury and the trial judge abused their discretion." *Morgan Publications, Inc. v. Squire Publishers, Inc.*, 26 S.W.3d 164 (Mo.App. W.D.2000). Here, Ms. Calarosa does not even offer us a figure to which the verdict should be increased—she just says the verdict was insufficient. Given the questions defendant and third-party defendant raised about the extent of Ms. Calorosa's damages, it would be difficult to say that the $50,000 verdict shocks the conscience.

 There is an even more basic reason why we cannot reverse the judgment of the court below on this issue—Ms. Calarosa did not request additur at the trial court level. She admits that she has thus not preserved this issue for review, but argues we should review for plain error. Plaintiff cites us to no authority for the proposition that a trial court can abuse its discretion in failing to grant additur without a request. The rule allowing additur, Rule 78.02, states: "It is a matter of the trial court's discretion whether a new trial should be granted on the grounds of a verdict's inadequacy, and the trial court will only be reversed for abuse of discretion." *Massman* indicates that a trial judge *could* grant additur on its own motion within 30 days of the verdict, if in its discretion, it believed that the amount of damages was not supported by the evidence, for a trial court has the discretion to grant a new trial based on the weight of the evidence. *Id.* Here, however, plaintiff requests us to find plain error in failing to grant additur *sua sponte*, the converse situation. There is no precedent for finding error in this situation. We decline to do so here.

 Finally, while plaintiff's Point Relied On conclusorily states that the court erred in failing to grant her a new trial, she did not in fact request one below, and she does not argue that a new trial was required in the argument portion of her brief on appeal. An argument that is merely stated in the Point Relied On and not developed in the argument is not preserved for review. *Krame v. Waller*, 849 S.W.2d 236, 239 (Mo.App. E.D.1993); *Hall v. Hall*, 804 S.W.2d 411, 415 (Mo.App. W.D.1991). Thus, her argument that we should find the trial court erred in failing to grant a new trial is denied.

For all of the reasons stated above, the judgment is affirmed.

Presiding Judge SMART, and Judge ELLIS concur.